IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAY 18 2023
ARTHUR JOHNSTON
BY _____ DEPUTY

**JASMINE SMITH**                                                                   **PLAINTIFF**

VS.                                                                                    CAUSE NO. 3:23-cv-314-CWR-FKB

**BLUE CROSS AND BLUE SHIELD
OF ALABAMA, AND JOHN DOES 1-X**                                       **DEFENDANTS**

*TRIAL BY JURY REQUESTED*
**COMPLAINT**

      **COMES NOW,** Jasmine Smith hereinafter referred to as Plaintiff, by and through her attorney, and hereby complains and alleges against Defendant Blue Cross and Blue Shield of Alabama, and Does 1-X.

**PARTIES**

      1.      Plaintiff (hereinafter sometimes referred to as "Plaintiff") is and was at all times relevant hereto, a resident and citizen of Madison County, residing at 204 Bradfield Road, Madison, MS, 39110.

      2.      The Defendant, Blue Cross and Blue Shield of Alabama, and hereinafter sometimes referred to as "Defendant Blue Cross," and was at all times relevant hereto, an Alabama corporation, doing business in Birmingham, Alabama, and qualified and registered to do business in the State of Mississippi. The Defendant, Blue Cross and Blue Shield of Alabama can be served with process of this action by and through its registered agent, John Cook at 775 Woodlands Parkway, Ridgeland, Mississippi 39157-5214.

      3.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does I through X, including without limitation, any employer,

1

franchisor, or owner d/b/a thereof are not currently known and therefore not yet named herein, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and therefore alleges, that each of the Defendants designated as Doe Defendants are responsible in some for the events and occurrences referred to in the Complaint filed in this cause of action. Plaintiff will ask leave of the Court to amend this Complaint and insert the true names and capacities of Doe Defendants I through X, when the same have been ascertained and to join said Defendants in this action.

4. The underlying bad faith which is the subject matter of this lawsuit occurred in Rankin County, Mississippi and the subject insurance policies were issued by Defendant Blue Cross in Mississippi.

## JURISDISCTION AND VENUE

5. Plaintiff incorporates the preceding paragraphs of this Complaint as though said paragraphs were fully set forth at this point herein.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. Venue is properly set in this District pursuant to 28 U.S.C. §1391 (b) since one or more of the Defendants transact business within this judicial district. Likewise, all of the events giving rise to the claim occurred within this judicial district.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates the preceding paragraphs of this Complaint as though said paragraphs were fully set forth at this point herein.

9. In July of 2019, Plaintiff began experiencing muscle spasms in her back that affected her day to day activities. The muscle spasms persisted and in August of 2019, Plaintiff was referred by her rheumatologist Dr. Robert McMurray to receive injections in her back to try and help alleviate the pain. Plaintiff underwent the injections and the injections did not alleviate her pain.

10. In 2014, Plaintiff contracted West Nile Virus and experienced a debilitating flare in 2019 resulting in neuropathy, weakness and other symptoms. Due to the flare occurring around the time of onset of Plaintiff's back pain, Plaintiff was recommended to continue with the same medications and physical therapy. Plaintiff's health from the West Nile Virus flare recovered but the pain in her back did not.

11. Plaintiff's physician then ordered physical therapy which did not alleviate her pain. Plaintiff continued her physical therapy off and on and received an additional injection from Dr. Edwin Dodd. Plaintiffs back got progressively worse from September to October 2021. Her back began catching and her hip started hurting as well. Her primary care physician Christie Hull, CFNP sent her to do a MRI on November 4, 2021. In November of 2021, Plaintiff's primary care physician, Dr. Christie Hull, CFNP referred her back to NewSouth NeuroSpine for evaluation due to an MRI showing Plaintiff had bulging discs at her L2-L3, L3-L4, L4-L5, and L5-S1 discs. Plaintiff at that time was referred to Dr. Andrew Cefalu at Foxworth Chiropractic.

12. In January of 2022, Plaintiff began seeing Dr. Cefalu but experienced too much pain during the sessions that Dr. Cefalu recommended that Plaintiff have her primary Doctor write a prescription for a metro dose pack. Her back and hips were not in any pain as long as she was the metro dose pack. However, as soon as the prescribed time for the metro dose pack

ended, Plaintiff's back was just as painful. Dr. Cefalu recommended that Plaintiff go to Total Pain Care Management in Flowood, MS for treatment.

13. In March of 2022, Plaintiff was assessed at Total Pain Care Management, the result of which was that Plaintiff was to receive a diagnostic S1 joint injection. Plaintiff was informed that if the pain was alleviated following the injection, the S1 joint was the source of her pain.

14. Plaintiff was informed by staff at Total Pain Care Management that Defendant Blue Cross would require two injections to determine positive diagnosis. The first injection was scheduled to occur on March 9, 2022 and the second to be occurring on April 11, 2022. Plaintiff began to feel some relief following the injections. The injections were diagnostic and confirmed because pain relief was even less that the first one. Plaintiff was informed that after two positive injections, Total Pain Care Management recommended a nerve ablation and would have to get insurance company approval. The insurance company denied the nerve ablation.

15. Dr. Richard Webb/Jennifer Albin, FNP then referred Plaintiff to Dr Adam Lewis for evaluation for a SI joint fusion. Dr. Lewis was seen in May of 2022. Every test that was conducted was probative to show the SI joint was involved.

16. From the MRI of 2021, Dr. Lewis showed Plaintiff that Plaintiff had a synovial cyst on the spine at the L4-L5. Dr. Lewis discussed with Plaintiff that she would have two surgeries, the SI joint fusion and remove the cyst.

17. The surgery was scheduled for June 26, 2022. However, the surgery was postponed because the Plaintiff had to have emergency gall bladder surgery June 7, 2022. Dr. Lewis' office recommended to Plaintiff to wait six weeks in order to give the gall bladder surgery an

opportunity to heal.

18. After the six weeks, Dr. Lewis started the process for surgery to be performed on July 22, 2022 and Plaintiff was to see Dr. Lewis on July 21, 2022 for the pre-operative visit.

19. Dr. Lewis submitted everything to the insurance company and the insurance company wanted more information. The insurance company required an additional exam, X-ray, and a CT scan. On July 18, 2022, Plaintiff submitted to the CT scan. Patient then went to her pre-operative visit July 21, 2022 and Dr. Lewis informed Plaintiff that the CT scan showed inflammation of the right of SI joint. Dr. Lewis told Plaintiff that he saw another spot of concern on the CT scan. Dr. Lewis informed Plaintiff that he would perform all three surgeries at the same time.

20. Dr. Lewis submitted everything to the insurance company and it took two to three weeks for the insurance company to respond.

21. The insurance company denied the SI joint fusion and authorized the lumbar decompression and removal of the cyst. The insurance company told Dr. Lewis, if the symptoms do not resolve, then the insurance company would authorize the SI joint fusion surgery can be done. The surgery for the lumbar decompression and removal of the cyst was performed August 24, 2022.

22. At Plaintiff's 6 week post operative appointment on October 4, 2022, Plaintiff was referred to have an MRI due to onset of left sided back pain in addition to preexisting back pain. Plaintiff called Dr. Lewis' office all of October 2022 leaving messages regarding scheduling MRI. In November 2022 someone finally called Plaintiff back and said the insurance company would not authorize the MRI and requested Plaintiff's therapy notes. In November

2022 someone finally called Plaintiff back and said the insurance company would not authorize the MRI and requested Plaintiff's therapy notes. Plaintiff contacted Sta-Home Health and had therapy notes sent to Dr. Lewis' office. Plaintiff's outpatient physical therapist, Dr. Brittany Flaggs, then sent Dr. Lewis' office a progress note stating that therapy was unable to fully correct Plaintiff's pelvic and sacral abnormalities due to extreme SI pain and instability and adhering to post operative back/spinal precautions. The insurance company approved the MRI in December. Plaintiff underwent the MRI on December 16, 2022. Plaintiff saw Dr. Lewis on December 22, 2022. Plaintiff was informed by Dr. Lewis that he would perform the surgery the week of December 26, 2022.

23. Plaintiff was to go for her pre-operative visit the week of December 26, 2022. The night of December 29, 2022, Plaintiff was called by Dr. Lewis's office and informed that the insurance company had denied the surgery.

24. Prior to and during the subject time frame, Plaintiff was a customer of Defendant Blue Cross through her husband Robert J. Smith's medical insurance policy bearing the contract no. DGU889534789 and group no. 15490.

25. The Policy unequivocally provides coverage for the services at issue in this matter, which Defendant Blue Cross has failed to honor despite repeated requests from Plaintiff.

26. It is irrefutable that Plaintiff needs the requested surgery in order to live a fully functional life.

27. Defendant Blue Cross owed Plaintiff the following duties, among others: (a) a duty to honor the Medical insurance contract for the entire policy duration; (b) a duty to conduct a prompt, reasonable and diligent investigation of the facts of the case to determine the validity

of the medical service requests made by Plaintiff against Defendant Blue Cross; (c) a duty to evaluate the Plaintiff' claims fairly; (d) a duty not to put its insureds through unnecessary litigation; (e) a duty not to put its insureds' health at risk; (f) a duty to refrain from actions that would injure the Plaintiff's insured ability to obtain the benefits of the insurance contract; and (g) a duty of good faith and fair dealing.

28. Upon information and belief, Plaintiff alleges that Defendant Blue Cross breached its duties owed to Plaintiff by, among other things; (a) failing to conduct a prompt, reasonable and diligent investigation of the claims made to Defendant Blue Cross; (b) failing to evaluate the claim fairly; (c) putting its insureds, Plaintiff herein, through unnecessary litigation; (d) putting its insureds' personal health at risk; and (e) failing to pay adequate reasonable portion of the insurance coverage to Plaintiff herein.

29. As a direct and approximate result of Defendant Blue Cross' breaches of its duties that it owed to its insureds, the Plaintiff herein, Plaintiff has been deprived of the benefits to which she was entitled and Plaintiff has otherwise been damaged in amounts to be determined at trial.

30. Defendant's actions herein constitute bad faith insurance practices.

31. The Court should enter a declaratory judgment, that Defendant must pay its policy limits to Plaintiff herein in order to satisfy the damages sustained by Plaintiff in the underlying bad faith.

32. Plaintiff has been required to engage the services of attorneys, and accordingly, have incurred attorneys' fees and costs to bring this action.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

33. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

34. The Policy issued to Robert J. Smith, that Plaintiff was a beneficiary of, created a valid and enforceable contract between the parties.

35. The Policy is clear, reasonable, subject to no other interpretation and was enforceable when Plaintiff sustained the subject medical conditions.

36. Plaintiff performed under the agreement.

37. Defendants breached its obligations under the policy when it, *inter alia*, responded to Plaintiff's claim with a pattern and practice of misinformation; mishandled her claim and her claim materials; issued a series of intentionally frivolous excuses; failed to adequately, timely and in good-faith investigate and resolve Plaintiff's claim and denied Plaintiff's claim based on an erroneous, bad-faith and faulty disclaimer without any reasonable basis upon which to deny Plaintiff and failed to provide Plaintiff with any grounds or detailed reasons for the denial.

38. Defendant Blue Cross' breach of contract has directly and proximately caused and continues to directly and proximately cause Plaintiff severe damages and irreparable harm, including but not limited to, the $33,611.50 reimbursement she is entitled to pursuant to the Policy; loss of the time money and resources Mrs. Smith and Mr. Smith has been forced to expend communicating with Defendant Blue Cross and drafting lengthy and detailed correspondence, complying with Defendant Blue Cross' excessive, burdensome and unreasonable demands; loss of wages; attorneys' fees, litigation expenses and additional costs

and fees Mrs. Smith and Mr. Smith have incurred dealing with Defendant Blue Cross' bad-faith and fraudulent conduct for over two (2) years.

39. In paying Policy premiums to Defendant Blue Cross, Plaintiff expected and was entitled to peace of mind and comfort in knowing that she would be promptly covered pursuant to the terms of the Policy in the event of needed medical services akin to the ones involved in this matter.

40. These damages sustained by Plaintiff as a direct and proximate result of Defendant Blue Cross' breach of contract were within the contemplation of the parties and were reasonably foreseeable by Defendant Blue Cross as the natural probable result of Defendant Blue Cross' breach of contract.

41. As a direct and proximate result of Defendant Blue Cross' breach of the Policy, Plaintiff has been massively and significantly damaged in an amount to be determined by the Court, but not less than $1,000,000.00 plus interests, costs, attorneys' fees and consequential damages beyond the Policy limits.

42. Defendant Blue Cross' breach of contract was fraudulent, intentional, willful, malicious and oppressive beyond the bounds of common decency and was intended to harm Plaintiff by purposefully delaying and avoiding payment of a valid insurance claim, attempting to deter and prevent Plaintiff from obtaining the insurance coverage to which she is entitled and forcing Plaintiff to have to engage in extensive communications with Defendant Blue Cross in an attempt to assist Defendant Blue Cross to adequately, timely and in good-faith investigate Plaintiff's claim. Such acts and/or omissions by Defendant Blue Cross are demonstrative of Defendant Blue Cross' pattern and practice of failing to adequately, timely and

in good faith investigate insurance claims, purposefully denying or avoiding its obligations to investigate and settle claims in good-faith, are directed toward the public in general and reveal a criminal indifference to civil obligations and are so egregious as to warrant the additional imposition of exemplary damages. Plaintiff is therefore entitled to recover punitive damages in the amount of $1,000,000.00 in addition to attorneys' fees, litigation expenses, additional costs and consequential damages beyond the Policy limits.

## SECOND CAUSE OF ACTION
**(Contractual Breach of the Implied Covenant Of Good Faith and Fair Dealing)**

43. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

44. By virtue of the existence of a valid and enforceable insurance policy issued by Defendant Blue Cross to Plaintiff in addition to Defendant Blue Cross' position as an insurance company providing insurance coverage to Plaintiff, Defendant Blue Cross was obligated to perform its duties and obligations in good faith and in a manner consistent with fair dealing and refrain from engaging in conduct detrimental to Plaintiff.

45. Insurance providers have a legal duty to act in good faith when it comes to investigating, adjusting, evaluating and paying claims.

46. Plaintiff promptly submitted to Defendant Blue Cross Plaintiff's claim for coverage in addition to all necessary documentary proof, but upon information and belief, Defendant Blue Cross failed to adequately, timely and in good faith investigate and evaluate Plaintiff's claims.

47. Defendant Blue Cross breached its duties of good faith and fair dealing by, *inter*

*alia,* repeatedly mishandling Plaintiff's claim and supporting documents; obligating Plaintiff to engage in prolonged communications with Defendant Blue Cross; failing to adequately, timely and in good faith investigate Plaintiff's claim; purposefully and in bad-faith avoiding and then denying a valid insurance claim without any reasonable basis to disclaim; stalling and ultimately refusing to perform its obligations pursuant to the Policy and issuing Plaintiff a bad faith, invalid and unjustified denial letter that fails to provide any grounds or detailed reasons for Defendant Blue Cross' disclaimer.

48.  In bad faith, Defendant Blue Cross grossly disregarded its obligations under the Policy.

49.  In bad faith, Defendant Blue Cross has exhibited deliberate and reckless indifference to Plaintiff's interests under the Policy and has failed to place Plaintiff's interests on equal footing with its own in considering Plaintiff's claims for coverage.

50.  Defendant Blue Cross' arbitrary and unreasonable conduct has prevented and continues to prevent Plaintiff from receiving the benefits of the Policy to which Plaintiff is entitled.

51.  As a direct and proximate result of Defendant Blue Cross' breach of its duties of good faith and fair dealing, Plaintiff has been massively and significantly damaged in an amount to be determined by the Court, but not less than $1,000,000.00 plus interest, costs, attorneys' fees, litigation costs and additional costs and fees.

52.  In addition, as a result of Defendant Blue Cross' improper conduct, Plaintiff seeks and is entitled to consequential damages beyond the Policy limits.

53.  The damages sustained by Plaintiff as a result of Defendant Blue Cross'

wrongful conduct and breach of duties of good faith and fair dealing were within the contemplation of the parties herein as the natural probable result of a breach of Defendant Blue Cross' duties.

### THIRD CAUSE OF ACTION
### (FRAUD)

54. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

55. By issuing the Policy to Plaintiff and accepting Plaintiff's payments of the Policy premiums, Defendant Blue Cross represented to Plaintiff that Defendant Blue Cross would adequately, timely and in good-faith investigate Plaintiff's insurance claim; timely and completely pay all covered claims; deal with Plaintiff's fairly and in good faith; comply with its contractual obligations and refrain from engaging in bad faith and additional dilatory tactics in order to dissuade and prevent Plaintiff's from following through with their claim.

56. These representations of material facts – that Defendant Blue Cross would adequately, timely and in good-faith investigate Plaintiff's insurance claim; timely and completely pay all covered claims; deal with Plaintiff's fairly and in good faith; comply with its contractual obligations and refrain from engaging in bad faith and additional dilatory tactics in order to dissuade and prevent Plaintiff's from following through with their claim; not waste Plaintiff's' time, money and resources by compelling them to engage in long-term, protracted communications with Defendant Blue Cross, over a period of over two (2) years, in order to attempt to compel Defendant Blue Cross to comply with its contractual obligations; and that Defendant Blue Cross would fully compensate Plaintiff's for the

medical emergency travel expenses incurred – were false.

57. Defendant Blue Cross knew said representations to be false when Defendant Blue Cross made them to Plaintiff as Defendant Blue Cross had no intention of complying with its contractual obligations and duties of good faith and fair dealing when it issued the Policy to Plaintiff.

58. Defendant Blue Cross made those false representations to deceive Plaintiff and to induce Plaintiff to rely on said representations and, in doing so, to purchase the Policy; to pay Policy premiums to Defendant Blue Cross; timely submit a complete and accurate claim; complying with Defendant Blue Cross's bad faith demands and engage in long-term protracted good faith communications with Defendant Blue Cross in an effort to aid Defendant Blue Cross and facilitate a timely resolution of the claim so that they could improperly reap the benefits of Plaintiff's insurance premium fees and additional benefits pursuant to the Policy.

59. Plaintiff reasonably relied on Defendant Blue Cross' false representations to Plaintiff's' detriment as Plaintiff continuously paid the premiums, made her valid claim and invested a significant amount of time and resources complying with Defendant Blue Cross's bad faith demands and engaged in long-term protracted good faith communications with Defendant Blue Cross in an effort to assist Defendant Blue Cross in investigating Plaintiff's claim.

60. Given the fairness and regularity of the Policy terms, the frequency with which other individuals enter into similar arrangements with insurance companies, and Defendant Blue Cross's prominence and experience in the insurance industry, Plaintiff justifiably relied on Defendant Blue Cross' false representations.

61. Defendant Blue Cross's fraudulent conduct has directly and proximately caused and continues to directly and proximately cause Plaintiff's severe damages and irreparable harm, including but not limited to, the Policy premiums paid to Defendant Blue Cross; the time, money and resources Plaintiff has expended complying with Defendant Blue Cross's bad-faith demands, communicating with Defendant Blue Cross in an attempt to facilitate the swift resolution of Plaintiff's claim; lost wages, continued and severe pain to the SI joint and attorneys' fees and litigation expenses.

62. As a direct and proximate result of Defendant Blue Cross's fraudulent conduct and Plaintiff's reasonable reliance thereon, Plaintiff has been significantly damaged in an amount to be determined by the Court but not less than $1,000,000.00 plus interest.

63. Defendant Blue Cross' wrongdoing and fraudulent conduct was intentional, willful, malicious and oppressive beyond the bounds of common decency and was intended to harm Plaintiff's by purposefully delaying and avoiding payment of a valid insurance claim, attempting to deter and prevent Plaintiff's from obtaining the insurance coverage to which they and then force Plaintiff to have to repeatedly resubmit multiple documents and engage in extensive communications with Defendant Blue Cross in an attempt to assist Defendant Blue Cross to adequately, timely and in good-faith investigate Plaintiff's claim. Such acts and/or omissions by Defendant Blue Cross are demonstrative of Defendant Blue Cross' systematic and institutional pattern and practice of failing to adequately, timely and in good faith investigate insurance claims, purposefully denying or avoiding its obligations to investigate and settle claims in good-faith, are directed toward the public in general and reveal a criminal indifference to civil obligations and are so egregious as to warrant the additional imposition of exemplary damages.

Plaintiff is therefore entitled to recover punitive damages in the amount of $1,000,000.00 in addition to attorney's fees, litigation expenses, additional costs and consequential damages beyond the Policy limits.

## FOURTH CAUSE OF ACTION
### (Fraud in the Inducement)

64. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

65. Defendant Blue Cross made false representations as noted *supra* to deceive Plaintiff and to induce Plaintiff to purchase the Policy; to make timely payments on the Policy premiums; finalize, incur and then pay the costs associated with the medical services; timely submit a complete and accurate claim; comply with Defendant Blue Cross's bad faith demands and engage in long-term protracted good faith communications with Defendant Blue Cross in an effort to aid Defendant Blue Cross and facilitate a timely resolution of the claim so that Defendant Blue Cross could improperly reap the benefits of Plaintiff's Policy.

66. Given the fairness and regularity of the Policy terms, the frequency with which other individuals enter into similar arrangements with insurance companies and Defendant Blue Cross' prominence and experience in the insurance industry, Plaintiff's justifiably relied on Defendant Blue Cross' false representations.

67. Defendant Blue Cross's wrongdoing and fraudulent conduct has directly and proximately caused and continues to directly and proximately cause Plaintiff severe damages and irreparable harm, including but not limited to, the Policy premiums paid to Defendant Blue Cross; the costs of the medical expenses Plaintiff incurred; the time, money and resources Plaintiff has expended complying with Defendant Blue Cross's bad-faith demands,

communicating with Defendant Blue Cross in an attempt to facilitate the swift resolution of Plaintiff's claim; the continued and severe pain Plaintiff suffers in the SI joint, lost wages and attorneys' fees and litigation expenses.

68.     As a direct and proximate result of Defendant Blue Cross' fraudulent inducement and Plaintiff's' reasonable reliance thereon, Plaintiff has been significantly damaged in an amount to be determined by the Court but not less than $1,000,000.00 plus interest.

69.     Defendant Blue Cross' wrongdoing and fraudulent inducement was intentional, willful, malicious and oppressive beyond the bounds of common decency and was intended to harm Plaintiff by purposefully delaying and avoiding payment of a valid insurance claim, attempting to deter and prevent Plaintiff from obtaining the insurance coverage to which she is entitled and forced to repeatedly resubmit multiple documents and engage in extensive communications with Defendant Blue Cross in an attempt to assist Defendant Blue Cross to adequately, timely and in good-faith investigate Plaintiff's' claim. Such acts and/or omissions by Defendant Blue Cross are demonstrative of Defendant Blue Cross' pattern and practice of failing to adequately, timely and in good faith investigate insurance claims, purposefully denying or avoiding its obligations to investigate and settle claims in good-faith, are directed toward the public in general and reveal a criminal indifference to civil obligations and are so egregious as to warrant the additional imposition of exemplary damages. Plaintiff is therefore entitled to recover punitive damages in the amount of $1,000,000.00 in addition to attorneys' fees, litigation expenses, additional costs and consequential damages beyond the Policy limits.

## FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

70. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

71. Defendant Blue Cross has engaged in a pattern and practice of wrongful conduct, including but not limited to, breaching the terms of the Policy; fraudulently inducing Plaintiff to purchase the Policy and pay the Policy premiums; fraudulently inducing Plaintiff's to incur $33,611.50 in medical expenses; repeatedly and in bad faith mishandling Plaintiff's claim and claim materials; issuing Plaintiff's a series of intentionally frivolous excuses; purposefully delaying and avoiding payment of a Plaintiff's' valid insurance claim, attempting to deter and prevent Plaintiff's from obtaining the insurance coverage to which she is entitled; compelling Plaintiff to have to repeatedly resubmit multiple documents and engage in extensive communications with Defendant Blue Cross in an attempt to assist Defendant Blue Cross to adequately, timely and in good-faith investigate Plaintiff's' claim and then issuing Plaintiff a defective, invalid and bad faith denial letter that fails to explain any grounds or detailed reasons for the disclaimer.

72. Defendant Blue Cross wrongfully failed to compensate Plaintiff's for premiums she paid when it mishandled Plaintiff's claim and supporting documents; forced Plaintiff's to engage in long-term, protracted good faith communications with Defendant Blue Cross in an effort to aid Defendant Blue Cross and facilitate a timely resolution of the claim and fraudulently, invalidly and in bad faith failed to properly reimburse Plaintiff for the medical expenses she incurred as Defendant Blue Cross promised that it would and is obligated to

pursuant to the Policy.

73. By accepting payments of the Policy premiums from Plaintiff and then subsequently engaging in wrongful conduct as described herein, Defendant Blue Cross has reaped and continues to reap significant and immense benefits, including, but not limited to, substantial income and revenue.

74. By way of their improper exploitation of Plaintiff and her time, money and additional resources, Defendant Blue Cross' fraudulent conduct, bad faith, breach of contract and refusal to perform its duties pursuant to the Policy, Defendant Blue Cross reaped significant benefits, including, but not limited to, the insurance premiums Plaintiff paid to Defendant Blue Cross.

75. Defendant Blue Cross improperly gained benefits came at the expense of Plaintiff.

76. Given the malicious, tortious and fraudulent conduct in which Defendant Blue Cross has engaged, detailed herein, equity and good conscious require that Defendant Blue Cross be prohibited from retaining that which it has misappropriated from Plaintiff and the benefits of its wrongdoing. Defendant Blue Cross unjustly gained benefits at Plaintiff's expense.

77. Equity and good conscious require that Defendant Blue Cross be prohibited from retaining that which it has misappropriated from Plaintiff and the benefits of its wrongdoing without fairly and reasonably compensating Plaintiff.

78. As a direct and proximate result of Defendant Blue Cross' wrongful conduct, Plaintiff has been significantly damaged in an amount to be determined by the Court, but not less than $500,000.00 plus interest.

79. Defendant Blue Cross' wrongdoing and fraudulent inducement was intentional, willful, malicious and oppressive beyond the bounds of common decency and was intended to harm Plaintiff by purposefully delaying and avoiding payment of a valid insurance claim, attempting to deter and prevent Plaintiff from obtaining the insurance coverage to which she is entitled and forced to repeatedly resubmit multiple documents and engage in extensive communications with Defendant Blue Cross in an attempt to assist Defendant Blue Cross to adequately, timely and in good-faith investigate Plaintiff's' claim. Such acts and/or omissions by Defendant Blue Cross are demonstrative of Defendant Blue Cross' pattern and practice of failing to adequately, timely and in good faith investigate insurance claims, purposefully denying or avoiding its obligations to investigate and settle claims in good-faith, are directed toward the public in general and reveal a criminal indifference to civil obligations and are so egregious as to warrant the additional imposition of exemplary damages. Plaintiff is therefore entitled to recover punitive damages in the amount of $1,000,000.00 in addition to attorneys' fees, litigation expenses, additional costs and consequential damages beyond the Policy limits.

**WHERFORE, THE ABOVE PREMISES CONSIDERED,** the Plaintiff, Jasmine Smith requests judgment in excess of the minimum jurisdictional limits of the Court for compensation and punitive damages as has been set out herein. Plaintiff further requests all court cost and attorney fees occurred herein be assessed against the Defendants, and for such other relief as the Court may deem necessary under circumstances.

THIS the 16th day of May, 2023.

                          Respectfully submitted,

                          **JASMINE SMITH, PLAINTIFF**

BY: _____
                          BRADFORD J. BLACKMON, MSB#104848

OF COUNSEL:

Barbara M. Blackmon, MSB #3346
Edward Blackmon, Jr., MSB #3354
BLACKMON & BLACKMON, PLLC
ATTORNEYS-AT-LAW
907 West Peace Street
Post Office Drawer 105
Canton, Mississippi 39046
Telephone: (601) 859-1567
Facsimile: (601) 859-2311
bjblackmon@blackmonlawfirm.com
bblackmon@blackmonlawfirm.com
edblackmon@blackmonlawfirm.com